United States District Court
Western District of Texas
San Antonio Division

| | §<br>§<br>§ | |
|---|---|---|
| IN RE ANDREW MOUNCE and<br>VALERIE VALLE MOUNCE<br>DEBTORS. | §<br>§<br>§<br>§ | |
| | § | Civil Action No.: SA-08-CA-816-XR |
| WELLS FARGO HOME MORTGAGE,<br>A DIVISION OF WELLS FARGO<br>BANK, N.A<br>APPELLANT, | §<br>§<br>§<br>§<br>§ | Bankruptcy Case No: 03-05022-lmc<br><br>Adversary No. 04-05182-lmc |
| v. | §<br>§ | |
| VALERIE VALLE MOUNCE<br>APPELLEE | §<br>§<br>§<br>§<br>§ | |

**ORDER**

On this date, the Court considered Appellant Wells Fargo's appeal from the Bankruptcy Court's order certifying a class to pursue claims against Wells Fargo. After considering the applicable law and the arguments of counsel, the Court VACATES the Bankruptcy Court's order certifying the Relief From Stay Overcharge Class and DISMISSES Mounce's claims for lack of subject matter jurisdiction without prejudice.

**I. BACKGROUND**

On June 10, 2002, Andrew and Valerie Mounce executed a promissory note payable to Wells Fargo in the original principal amount of $71,697.00. The loan was secured by a lien against the Mounces' residence. On September 5, 2003, the Mounces filed a joint petition for relief under

1

Chapter 7 in the Texas Western District Bankruptcy Court. The Mounces claimed the residence property as an exempt homestead. After the Mounces did not make the required post-petition monthly payments to Wells Fargo for November and December 2003, Wells Fargo moved for relief from the automatic stay in the bankruptcy case. The lift-stay motion was prepared by the law firm of Brice, Vander Linden & Wernick, which was handling the Mounces' bankruptcy for Wells Fargo. To resolve the motion, the Mounces agreed to pay Wells Fargo $2,150.02, which represented the amount of the two outstanding monthly payments on the loan, attorneys' fees and costs in the amount of $600, and late charges in the amount of $59.64. This agreement was memorialized in an Agreed Order on December 11, 2003. On December 15, 2003, the Mounces received a discharge under Section 727 of the Bankruptcy Code. The Agreed Order was entered by the Bankruptcy Court on December 23, 2003.

The Mounces claim that approximately six months after their bankruptcy discharge they received a letter from Wells Fargo demanding $166.83 in "outstanding fees and costs." Subsequently, on December 22, 2004, the Mounces filed their Original Class Action Complaint in this adversary proceeding against Wells Fargo, asserting various causes of action and claiming that Wells Fargo misrepresented the amounts of fees and costs that it incurred from its law firm for the lift-stay motion. On May 15, 2006, the Bankruptcy Court dismissed three of the Mounces' five claims, leaving two claims for violation of the discharge injunction and breach of contract. On November 7, 2006, the Mounces filed a First Amended Class Action Complaint, in which they added claims for misrepresentation and coercion stemming from an alleged misrepresentation about the amount of Wells Fargo's attorneys' fees incurred in connection with the lift-stay motion. On May 10, 2007, Valerie Mounce filed a Second Amended Class Action Complaint that narrowed the class definition

and removed Andrew Mounce as a plaintiff due to his incarceration.

On May 24, 2007, Mounce filed a Motion for Class Certification requesting to certify and represent a class of plaintiffs who (1) have or had a home mortgage loan serviced by Wells Fargo, (2) filed for bankruptcy under Chapter 7 or 13 in any judicial district in Texas, (3) whose loan Wells Fargo referred to the Brice firm for bankruptcy services, (4) against whom Wells Fargo filed a motion for relief from stay, (5) from whom Wells Fargo demanded and/or collected fees and costs in connection with the lift-stay motion, (6) during the time period between the date five years prior to the filing of the Complaint and the present.

On May 28, 2008, the Bankruptcy Judge entered an Order granting the Plaintiffs' Motion for Class Certification (bankr. docket no. 129) in this adversary proceeding. The Bankruptcy Judge certified the class under Federal Rule of Civil Procedure 23(b)(3) and Federal Rules of Bankruptcy Procedure 7023 with regard to Mounce's breach of contract and misrepresentation claims. However, he did not certify a class with regard to Mounce's coercion claim because the cause of action, he explained, had yet to be recognized by Texas courts or the Fifth Circuit, and Mounce does not challenge this determination to this Court. On June 3, the Bankruptcy Judge entered an Order Certifying the Relief from Stay Overcharge Class (bankr. docket no. 131).

On June 13, 2008, Defendant Wells Fargo simultaneously filed a Notice of Appeal and a Motion for Leave to Appeal from the Order Certifying the Relief From Stay Overcharge Class with this Court and the Fifth Circuit. Six days later, Wells Fargo filed a Motion for Stay Pending Appeal in the Bankruptcy Court. On June 23, Plaintiffs filed a Motion for Order Permitting Additional Limited Discovery and For Approval of Class Notice in the Bankruptcy Court. On July 10, 2008, the Bankruptcy Judge entered an Order denying the Motion for Stay Pending Appeal and scheduled

a discovery conference for August 7, 2008. The next day, the Bankruptcy Judge issued an order granting Mounce's Motion for Order Permitting Additional Limited Discovery and for Approval of Class Notice. On August 5, 2008, this Court granted Wells Fargo's motion for leave to appeal, but indicated that it would abstain from ruling until the Fifth Circuit made a determination. The same day, the Fifth Circuit denied without prejudice Wells Fargo's motion for leave to appeal pending a review by this Court. On August 18, this Court stayed all of the proceedings in the Bankruptcy Court and now addresses Wells Fargo's challenge of the Bankruptcy Court's certification order for lack of subject matter jurisdiction.

## II. STANDARD OF REVIEW

Whether a bankruptcy court has subject matter jurisdiction is a question of law. *In re Grand Jury Proceedings*, 115 F.3d 1240, 1243 (5th Cir. 1997). Thus, we review a determination of bankruptcy jurisdiction de novo. *Id.*

## III. LAW & ANALYSIS

### A. Statutory Scheme

The parameters of district courts' bankruptcy jurisdiction are enunciated in 28 U.S.C. § 1334. The provisions of section 1334 relevant to this case read as follows:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) *Except as provided in subsection (e)(2), and notwithstanding* any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
>
> (c)

4

> (1) *Except with respect to a case under chapter 15 of title 11, nothing* in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

*Id.* These subparts work together to create the foundation for district courts' jurisdiction over bankruptcy cases. *Id.* Specifically, subsection (a) and (b) vests the district courts with their bankruptcy jurisdiction. Subsection (c) confers "the power to exercise that jurisdictional grant in the bankruptcy courts." *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). Therefore, bankruptcy courts derive their power to exercise jurisdiction from district courts' bankruptcy jurisdiction and district court's power to refer those matters to bankruptcy courts pursuant to subsection (c).[1]

However, district courts' bankruptcy jurisdiction is not limitless. Subparts (a) and (b), confine district courts' bankruptcy jurisdiction to four categories:

> (1) Cases under title 11
> (2) Proceedings arising under under title 11

---

[1] As noted above, bankruptcy courts derive their power to exercise jurisdiction from district courts' bankruptcy jurisdiction. In cases analyzing a bankruptcy court's jurisdiction, there is a two-step analysis. *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988). First, the court determines if the district court has bankruptcy jurisdiction pursuant to section 1334. *Id.* If it does, the second inquiry is whether the bankruptcy court has the right to make a final judgment on an issue. *Id.* The first inquiry is the one relevant to this case. To this end, the Court's analysis will focus on whether it has subject matter jurisdiction. This "places the focus properly on [the district court's subject matter jurisdiction, placing the always-thorny questions of bankruptcy courts' judicial power to the side." *In re Simmons*, 205 B.R. 834, 837 (Bankr. S.D.Tex. 1997).

> (3) Proceedings arising in a case under title 11, and
> (4) Proceedings related to a case under title 11.

*In re Simmons*, 205 B.R. 834, 837 (Bankr. S.D.Tex. 1997) (citing 28 U.S.C. § 1334 (a) and (b)). Categories one and two are the least controversial of the four. Category one vests district courts with exclusive jurisdiction over bankruptcy cases, which are initiated by "by the filing of a petition and accompanying schedules." Darrell Dunham, *Bankruptcy Court Jurisdiction*, 67 U. MO. KAN. CITY L. REV. 229, 236 (1999). This category basically gives the courts jurisdiction over bankruptcy petitions. Category two provides jurisdiction to courts for causes of action created under a provision of title 11. *See Simmons*, 205 B.R. at 839. In other words, bankruptcy jurisdiction exists for "any matter under which a claim is made under a provision of title 11." *Id.* For example, the claim of exemptions under 11 U.S.C. § 522, a claim of discrimination in violation of 11 U.S.C. § 525, and any action by a trustee under an avoiding power would all be proceedings that "arise under" a bankruptcy case. ALAN N. RESNICK & HENRY J. SOMMER, 1 COLLIER ON BANKRUPTCY § 3.01[4][c][I] (15th ed. 2002). Neither parties' arguments are in conjunction to either category one or two, and the Court does not believe that these categories apply in this case. Thus, the claims must come under category three, "arising in" jurisdiction, or four, "related to" jurisdiction, or be dismissed for lack of subject matter jurisdiction.

**B. Parties' Arguments**

As previously noted, the Bankruptcy Court certified Mounce's proposed class for her misrepresentation and breach of contract claims. Wells Fargo argues that the Bankruptcy Court lacks jurisdiction to certify the proposed class because this Court: (1) lacks subject matter jurisdiction over Mounce's claims and (2) lacks subject matter jurisdiction over the putative class members' claims. Because the Court determines that it does not have jurisdiction over Mounce's claims, the Court does

not address the second argument in Wells Fargo's brief that the Court lacks jurisdiction over the putative class members' claims.

In regard to jurisdiction over Mounce's claims, Wells Fargo argues that the Court lacks jurisdiction because Mounce's claims are not "related to" her bankruptcy case. A claim is "related to" a bankruptcy case if the outcome of the proceeding would have an effect on the debtor and the estate. *Wood*, 825 F.2d at 93; *see also Celotex Corp. v. Edwards*, 514 U.S. 300, fn. 6 (1995) (explaining that the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the effect test to determine whether a matter is "related to" a bankruptcy). Specifically, Wells Fargo argues that Mounce's claims are not "related to" her bankruptcy case for three reasons. First, the outcome of a proceeding on those claims would have no conceivable effect on her bankruptcy estate. Second, Mounce's claims are not property of the bankruptcy estate within the scope of the Court's jurisdiction under section 1334. Finally, her claims arose after her bankruptcy estate ceased to exist.

Wells Fargo also argues that based on the Fifth Circuit's decision in *In re Wood* the Court's analysis of its jurisdiction should begin and end with an analysis of its "related to" jurisdiction. 825 F.2d 90 (5th Cir. 1987). In *Wood*, the Fifth Circuit addressed the scope of district courts' bankruptcy jurisdiction pursuant to section 1334 and the scope of bankruptcy courts' power as contemplated in section 157. *Id.* The Fifth Circuit determined that the district court did have bankruptcy jurisdiction over the claims in that case. *Id.* In making this determination, the Court explained:

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related to a case under", title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is *at least* "related to" the bankruptcy. The Act does not define "related" matters. Courts have articulated various definitions of

7

> "related", but the definition of the Court of Appeals for the Third Circuit appears to
> have the most support: "whether the outcome of that proceeding could conceivably
> have any effect on the estate being administered in bankruptcy."

*Wood*, 825 F.2d at 93 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (italics omitted) (emphasis added). The Fifth Circuit's interpretation of section 1334(b) reads simply that the proceeding should *at least* be related to the bankruptcy case. The language does not read that the proceeding need *only* be related to the bankruptcy case.

Furthermore, Wells Fargo's argument effectively means that a district court need not examine or analyze the other ways it may have jurisdiction under section 1334. This would basically lump "arising under," "arising in," and "related to" jurisdiction together into one category. This is not how courts properly analyze their jurisdiction under section 1334. *See Sykes v. Tex. Air Corp.*, 834 F.2d 488, 490 (5th Cir. 1987) (explaining that the lower court in that case conflated "[section] 1334(b)'s three distinct categories," but "analyzed the jurisdictional question within the proper category"). As the bankruptcy court in *Simmons* noted, "[a] facial reading of the statute suggests that the three categories were intended to address separate, although perhaps overlapping jurisdictional issues. That reading comports with a basic tenet of statutory construction that every word in a statute be given effect." 205 B.R. at 838. Although the Court agrees that "related to" jurisdiction is most likely the least complex category with which to establish jurisdiction, it is not the only door by which a claim may enter bankruptcy jurisdiction. Thus, our analysis addresses Wells Fargo's "related to" jurisdiction arguments, as well as Mounce's "arose in" jurisdiction arguments.

In response to Wells Fargo's argument, Mounce argues that her claims fall within the scope of the Court's jurisdiction because the claims "arose in" her bankruptcy case. The definition of proceedings that fall under the Court's "arising in" jurisdiction will be discussed further below.

8

However, these types of proceedings are, basically, "'administrative' matters that arise *only* in bankruptcy cases." *Wood*, 825 F.2d at 97 (emphasis in original). Mounce argues that her claims "arose in" her bankruptcy case because the claims are inextricably intertwined with Wells Fargo's motion for relief from stay and the Agreed Order filed in her bankruptcy case; therefore, the claims could only arise in her bankruptcy case. The Court disagrees and finds in favor of Wells Fargo.

Below the Court analyzes the jurisdictional arguments made by the parties, beginning with Mounce's assertion that her claims fall under the Court's "arising in" bankruptcy jurisdiction.

**C. Analysis of Jurisdiction**

*1. "Arising In" Jurisdiction*

Mounce argues that her claims "arose in" her bankruptcy case, and thus, the Court has subject matter jurisdiction. The Court disagrees. Proceedings that "arise in" bankruptcy cases are "'administrative' matters that arise *only* in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood*, 825 F.2d at 97 (emphasis in original). There is not a bright-line rule for determining whether matters would or would not exist outside of the bankruptcy context, and the Fifth Circuit has yet to address this determination in depth. After reviewing relevant treatises, law reviews, and cases in and outside of the Fifth Circuit, there seems to be two approaches to determining "arising in" jurisdiction.

One approach claims that "arising in" jurisdiction is determined by asking whether the claim(s) would have occurred "but for" the bankruptcy. *See Simmons*, 205 B.R. at 840 (citing Susan Block-Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis*, 62 FORDHAM L. REV. 721, 733 (1994). Still, another approach claims that the "but

for" approach to "arising in" jurisdiction does not exist. RESNICK & SOMMER, 1 COLLIER ON BANKRUPTCY at § 3.01[4][c][iv]. Supporters of this approach claim that the "but for" test "expand[s] bankruptcy jurisdiction well beyond that contemplated by the drafters" of section 1334. *Id.* This approach requires a two-step inquiry to establish "arising in" jurisdiction: (1) "Is there a cause of action created by [the bankruptcy] statute?" or (2) "[C]ould any of the matters illustrated been the subject of a lawsuit absent the filing of a bankruptcy case?" *Id.*

At first glance, both approaches seem the same. Both require an analysis of the claim's relation to the underlying bankruptcy proceeding. However, the "but for" approach gratuitously expands bankruptcy jurisdiction to the point where *almost anything* that occurs during a bankruptcy proceeding would fall under bankruptcy jurisdiction. The language of the two-step inquiry seems to be the better approach because it provides guidelines for distinguishing between *any* matter that occurs during the bankruptcy proceeding and proceedings that could not exist outside of the bankruptcy context. Thus, the analysis is less dependent on analyzing the facts underlying the claims and focuses on the types of claims that could only be brought in the bankruptcy context. *See Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir.2006) (explaining that "claims that 'arise in' a bankruptcy case are claims that by their nature, *not their particular factual circumstance,* could only arise in the context of a bankruptcy case."). Mounce does not argue that her claims were created by Title 11; the root of her argument is that the claims would not be the subject of a lawsuit without the alleged violation of the Agreed Order, which would not exists absent her bankruptcy case. Thus, the Court's analysis rests on the second part of the two-step inquiry—would a determination of Wells Fargo's alleged violation of the Agreed Order have been the subject of a lawsuit absent the bankruptcy case.

There are multiple cases analyzing whether claims are under a court's "arising in" jurisdiction.

*See* RESNICK & SOMMER, 1 COLLIER ON BANKRUPTCY at § 3.01[4][c][iv] (citations omitted) and 9 Am. Jur. 2d, BANKRUPTCY 708 (2009). In each of these cases, the claims are analyzed according to the type of claim, and it would be ideal to analyze Mounce's claims in this manner. *Id.*; *see also Stoe*, 436 F.3d at 218. However, in her brief, Mounce lumps her breach of contract claim together with her misrepresentation claim. With no discussion of the claims individually, Mounce goes on in her brief to make a general assertion that her claims are *clearly* linked to her bankruptcy case because the $166.83 charge for costs and fees was allegedly in violation of the Agreed Order entered by the Bankruptcy Court. However, this logic is erroneous.

An agreed order is akin to a consent decree. Both are the same strange legal hybrid in which parties enter "a voluntary settlement agreement [that] could be fully effective without judicial intervention," and the power of the court to place a final judicial order rests with a compromise struck by the parties. *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983); *see also* 56 Am.Jur.2d, Motions, Rules and Orders 44 (1971) (explaining that "An agreed order is a recordation of an agreement between the parties and is not a judicial determination of the parties' rights. It is a written agreement between the parties to a lawsuit, and is to be interpreted as any other contract"). Therefore, the case law discussing the nature and treatment of a consent decree should be applied to the court's analysis of claims connected to the Agreed Order in this case.

The Supreme Court has explained that because consent decrees share the same attributes as contracts they should be treated like contracts without reference to the claims originally sought by the plaintiff. *United States v. ITT Cont'l Baking, Co.*, 420 U.S. 223, 236–37 (1975). Furthermore, the "[s]cope of a consent decree must be discerned within its four corners and not by reference to what might satisfy purposes of one party to it or by what might had been written had plaintiff

11

established factual claims and legal theories in litigation." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984). To this end, the interpretation of an agreed order, like a consent decree, does not necessitate an examination of the underlying dispute. Thus, the interpretation of the Agreed Order in this case can stand alone and apart from the bankruptcy case.

As previously noted, "arising under" jurisdiction depends on the claims, here breach of contract and misrepresentation, being inextricably intertwined with the bankruptcy proceeding. Because the interpretation of an agreed order is not inextricably intertwined to Mounce's bankruptcy case, the Court does not have "arising in "jurisdiction over Mounce's claims. This is not to say that the interpretation of an agreed order will never fall within bankruptcy jurisdiction. There could be situations where the parties' agreed order specifies that the bankruptcy court shall have continuing jurisdiction over claims connected to the order after the discharge of the bankruptcy. Also, a court could have "related to" jurisdiction if the claims connected to the agreed order will have an effect on the bankruptcy case. Because the Agreed Order in this case does not contain language authorizing the Bankruptcy Court with continuing jurisdiction over claims connected to the Agreed Order, the only possible, remaining source of bankruptcy jurisdiction over Mounce's claims is "related to" jurisdiction.

### 2. "Related To" Jurisdiction

Wells Fargo claims that the Court lacks bankruptcy jurisdiction because Mounce's claims are not "related to" her bankruptcy proceeding. Wells Fargo argues that the threshold question for this determination is whether the claims are "at least 'related to' the bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). A claim is "related to" a bankruptcy if the outcome of the proceeding would have an effect on the debtor and the estate. *Wood*, 825 F.2d at 93. Thus, when determining "related

to" jurisdiction, a court must primarily determine how the proceeding's outcome will affect the debtor and affect the handling and administration of the estate. The Court agrees with Wells Fargo that Mounce's claims are not "related to" her bankruptcy.

Wells Fargo argues that Mounce's claims are not related to her bankruptcy case because her claims are not property of her bankruptcy estate and her claims arose after her bankruptcy estate ceased to exist. However, it is not necessary under a "relating to" analysis to determine the characterization and timing of the claims, as Wells Fargo claims. The sole inquiry under the "related to" analysis is the effect the outcome of the proceeding will have on the debtor and the estate.

It is clear that paying more attorneys' fees will have an effect on Mounce. However, Mounce's claims would not have an effect on her estate. As Wells Fargo points out, during her bankruptcy proceeding, Mounce claimed her homestead as exempt property, and the bankruptcy trustee determined that no assets existed that could be administered for the benefit of Mounce's creditors. Thus, all of her property was in one way or another removed from the bankruptcy estate. *See Owen v. Owen*, 500 U.S. 305, 308 (explaining that "[a]n exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor"). Accordingly, Mounce's claims relating to mortgage payments on her homestead could not affect her estate given that the homestead was not part of the estate.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Bankruptcy Court lacks subject matter jurisdiction over Mounce's claims. Accordingly, the Court VACATES the Bankruptcy Court's order certifying the Relief From Stay Overcharge Class and DISMISSES Mounce's claims

13

for lack of subject matter jurisdiction without prejudice.[2]

It is so ORDERED.

SIGNED this 26th day of August, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[2]The Court notes that its holding should in no way be viewed as an assessment of the validity of Mounce's claims against Wells Fargo for allegedly violating agreed orders, loan agreements, or contracts by overcharging her for attorneys' fees. Nor should this Court's decision be viewed as an evaluation of Mounce's or any putative class members' ability to bring these claims in a state or federal court as jurisdiction permits.